UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

----------------------------------------------------------------- x

DONALD DANIELS,                                    :
                                                   :
                           Plaintiff,              :
                                                   :          **ORDER DENYING**
              -against-                            :          **DEFENDANT'S MOTION**
                                                   :          **FOR SUMMARY**
COMMISSIONER QUIROS,                               :          **JUDGMENT**
et al.,                                            :
                                                   :          3:23-cv-817 (VDO)
                           Defendants.             :
----------------------------------------------------------------- x

**VERNON D. OLIVER**, United States District Judge:

Plaintiff Donald Daniels is an inmate in the custody of the Connecticut Department of

Correction ("DOC") and was formerly incarcerated at Garner Correctional Institution

("Garner").[1] He is proceeding in this action *pro se* and *in forma pauperis* under 42 U.S.C. §

1983 for violation of his Eighth Amendment rights against Nurse Shannon Draughn in her

individual capacity for her deliberate indifference to his medical needs. Initial Review Order

("IRO"), ECF No. 11.

Pending is a motion for summary judgment filed by Defendant Draughn, arguing that

Plaintiff's Eighth Amendment claim fails as a matter of law, and alternatively, that she is

entitled to qualified immunity. Mot. for Summ. J., ECF No. 28.[2]

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The Connecticut DOC website reflects that Plaintiff was sentenced on December 7, 2018 and is now incarcerated at Cheshire Correctional Institution. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=366208 (last visited March 17, 2025).

[2] Defendant has certified compliance with the Notice to *Pro Se* Plaintiff under Local Rule 56(b). Notice, ECF No. 28-7.

After careful review, the Court **DENIES** Defendant's motion for summary judgment.

## I.    BACKGROUND

The following factual background reflects the Court's review of the complaint,[3] the parties' Local Rule 56(a) statements of facts, and all supporting materials. *See* Compl., ECF No. 1; Def.'s L.R., ECF No. 28-2; Pl.'s L.R., ECF No. 38-1 at 7–14.[4]

### A.    Plaintiff's Allegations

Plaintiff has asthma and has suffered from breathing issues all of his life. Compl. ¶ 9. Defendant Draughn is a correctional nurse with whom Plaintiff has discussed his breathing issues; he has requested a nebulizer from her on several occasions. *Id.* ¶¶ 7, 11.

On November 12, 2022, Plaintiff experienced breathing issues while working at the Garner kitchen. *Id.* ¶ 10. The Kitchen Supervisor heard him cough and told him to go see the nurse who was then doing the medical pass. *Id.* The Kitchen Supervisor told Plaintiff he needed medical attention and walked with him over to see Nurse Draughn. *Id.* ¶ 12.

---

[3] *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist, provided that it meets the other requirements for an affidavit under Rule 56(e)."); *Jordan v. LaFrance*, No. 18-CV-1541 (MPS), 2019 WL 5064692, at *3 (D. Conn. Oct. 9, 2019) (finding that a verified complaint may be considered as an affidavit for summary judgment purposes).

[4] Local Rule 56(a)1 provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact." Local Rule 56(a)3 provides that "each denial in an opponent's Local 56(a)2 Statement[] must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial."

Plaintiff advised Nurse Draughn that he was having breathing issues, but she allegedly responded, "you look fine," told him to "write a request," and then walked away. *Id.* Plaintiff claims he was forced to "self-medicate" by using a "rescue" inhaler, which significantly increased his blood pressure. *Id.*

Approximately twenty-minutes later, he coughed up blood. *Id.* ¶ 13. After Nurse Draughn failed to respond to the kitchen staff's several attempts to reach her by telephone and radio, a Code White (call for emergency medical assistance) was made. *Id.* Nurse Draughn was the last to respond to the Code White. *Id.*

Two days later, a doctor provided Plaintiff with a prescription for Prednisone mucus relief and nasal spray to help alleviate his symptoms and also ordered him an X-ray. *Id.* ¶ 14.

B.    **Undisputed Facts**[5]

On November 12, 2022, Plaintiff was housed at Garner. Def.'s L.R. ¶ 2. Plaintiff is asthmatic. *Id.* ¶ 6.

On November 12, 2022, Plaintiff had been prescribed two inhalers: (1) Symbicort, a long-term inhaler; and (2) Ventolin, a rescue albuterol inhaler. *Id.* ¶ 7.

During the afternoon of November 12, 2022, Plaintiff was working in the Garner kitchen. *Id.* ¶ 8; *See also id.* at ¶¶ 9–10.

---

[5] The cited page numbers are the page numbers assigned by the CM/ECF system as reflected in the ECF header and not the page numbers marked on the documents themselves, if any. Generally, the Court cites only to the relevant paragraph in the Local Rule 56(a)1 Statement where a fact is not disputed. The page numbers cited to in this Order regarding any documents that have been electronically filed refer to the page numbers imprinted by the electronic case filing system on the header of the documents and not to the page numbers of the original documents, if any.

At 1:45 PM, Nurse Draughn approached the kitchen door to administer routine afternoon medication to inmates. *Id.* ¶ 9. Plaintiff advised her that he was having trouble breathing and that he was an asthmatic. *Id.* ¶ 11. Common signs and symptoms of respiratory distress include, but are not limited to, shortness of breath, a blue tinge around the mouth, labored breathing, audible wheezing, and a hunched over stature. *Id.* ¶ 14.

Nurse Draughn declares that she observed Plaintiff walking towards her with a normal gait, smiling, normal skin tone, and talking in complete sentences, and that she did not hear any audible wheezing or labored breathing. Def.'s ex. A (Draughn decl.), ECF No. 28-3 ¶¶ 10–11. Nurse Draughn avers that she did not know Plaintiff's name or medical history, and did not have any medical equipment on her person or access to electronic medical records on November 12, 2022. *Id.* ¶¶ 8, 12. Nurse Draughn states that she confirmed that Plaintiff had his prescribed rescue inhaler with him and advised him to use the albuterol inhaler. *Id.* ¶ 16.

The medical note relevant to Plaintiff's interaction with Nurse Draughn on November 12, 2022 was signed by Draughn on December 27, 2022. Def.'s ex. C (Medical Record), ECF No. 26 at 27. It states:

> Inmate approached nurse while medication administration was being completed at the kitchen door. inmate approached cart smiling and states " I am having trouble breathing:, respirations appeared to be normal rate and unlabored, no audible wheeze noted. skin is clear and dry. inmate walked up to cart with a normal gait, posture erect with hands dow[n] by his sides. no cute distress noted. inmate states he has a hx of asthma and states he has an inhaler. inmate encouraged to use inhaler and if no positive effect noted to contact medical.

*Id.*

DOC nursing protocol outlines that the use of an albuterol inhaler is the first step in treating shortness of breath and if proven ineffective another level of medical intervention is then warranted. Def.'s L.R. ¶ 17.

At approximately 2:13 PM, DOC kitchen staff called Nurse DeCampos to assess Plaintiff for difficulty breathing. *Id.* ¶ 20. Nurse DeCampos later left to obtain additional medication. *See* Def.'s L.R. ¶ 21; Pl.'s L.R. ¶ 21.

At approximately 2:32 PM, a "medical code" or Code White was called for the stated reason that Plaintiff had thrown up blood. Def.'s L.R. ¶ 22; *see* Def.'s ex. D (Incident Reports), ECF No. 27 at 2–9, 11, 15–18. Nurse Draughn avers that she responded to the call, but other nurses were already evaluating Plaintiff when she arrived. Def.'s ex. A (Draughn decl.) ¶¶ 20–21.

After Plaintiff was assessed, a nurse ordered that he be transported to his medical unit for evaluation. Def.'s L.R. ¶ 23. An incident report by Nurse Campos for the November 12, 2022 Code White states:

> On date and time above this writer responded to a code white in kitchen. Inmate Daniels, Donald #36620 was in respiratory distress. He has preexisting medical condition related respiratory illness and so he has medications ordered that are used to treat him if he develops symptoms of respiratory distress. These medications were given along with removing him from kitchen area in wheelchair to decrease oxygen need on his body. He was assessed immediately and monitored until medications began working and vitals stabilized. Once he felt stable and vitals were within normal limits he was brought back to his housing unit in a wheel chair and instructed to rest and let his body recover from the situation without exacerbating his condition. This writer followed up on him a little while later and he stated his condition had improved and he was no longer in any distress.

Def.'s ex. D (Incident Reports) at 11.[6] In her incident report, DOC staff member Lisa Venditti—whom Plaintiff identifies as the Kitchen Supervisor[7]—noted the following:

> On Saturday November 12, 2022, at approximately 1:45 pm Inmate Daniels (366208) complained of having asthma trouble. A nurse came to the kitchen B side door to administer meds, the nurse spoke to Inmate Daniels, and told him that he "looked fine"

---

[6] This incident report appears to be misdated as 11/12/2021.

[7] *see* Pl.'s decl., ECF No. 38-2 ¶¶ 8, 11.

and left. At approximately 2:13 pm, I CFSS Venditti contacted medical because Inmate Daniels told me that he was having trouble breathing and chest pain. Another nurse came to the kitchen moments later and evaluated Inmate Daniels, and determined that he needed medication. That nurse stated he was going to get a pill and would return shortly. At approximately 2:32 pm, Inmate Daniels exited the Inmate restroom, and stated, "I just threw up blood." Inmate Daniels looked pale, sweaty, and complained of chest pain/difficulty breathing. I, CFSS Venditti, assisted Inmate Daniels to a seated position, because he looked unsteady on his feet. Code white called by the kitchen officer, utilizing the hand held radio for immediate medical response. Inmate Daniels, assisted to a wheelchair, and escorted by staff to medical unit.

*Id.* at 8.

In the relevant medical document for the Code White, Nurse Campos indicated that "PRN medication [was] giv[e]n to open up [Plaintiff's] airways with good result" and that he was assessed as "currently stable." Def.'s ex. C (Medical Record) at 55.

Plaintiff was not given nebulizer treatment on November 12, 2022.[8] Def.'s L.R. ¶ 25; Def.'s ex. B (Campos decl.), ECF No. 28-4 ¶ 19.

### B.    Procedural Background

The Court includes herein the following relevant procedural history.

On June 20, 2023, Plaintiff commenced this action by filing his complaint in this Court. Compl., ECF No. 1. On the same day, Plaintiff filed his motion for leave to proceed *in forma pauperis*. Mot. to Proceed IFP, ECF No. 2. On June 23, 2023, the Court granted his motion to proceed *in forma pauperis*. Order, ECF No. 5.

On October 24, 2023, the Court issued its Initial Review Order to permit Plaintiff's Eighth Amendment claim of medical indifference to proceed against Nurse Draughn in her

---

[8] A nebulizer changes medication from a liquid to a mist for inhalation into the lungs. *See* https://www.webmd.com/asthma/home-nebulizer-therapy.

individual capacity. IRO, ECF No. 11. The Court dismissed Plaintiff's claims against all other defendants. *Id.*

On January 25, 2024, Defendant Draughn filed her answer, which included the affirmative defense of qualified immunity. Answer, ECF No. 16.

On May 20, 2024, Defendant Draughn filed her motion for summary judgment. Mot. for Summ. J., ECF No. 28.

On May 28, 2024, Plaintiff filed a motion to compel discovery, which the Court denied on June 14, 2024 because the motion was procedurally improper and the discovery deadline had passed. Order, ECF No. 36; Mot. to Compel, ECF No. 29.

Plaintiff also filed a motion for appointment of counsel that the Court denied as the record was not yet sufficient to determine if Plaintiff's Eighth Amendment claims were of sufficient merit to warrant an appointment of *pro bono* counsel. Order, ECF No. 33; Mot. for Appoint., ECF 23.

On July 18, 2024, Plaintiff filed his opposition to the motion for summary judgment, which included a memorandum, Local Rule 56(a)2 statement of facts, and supporting exhibits. *See* Pl.'s Opp., ECF No. 38, Pl's. Mem & L.R., ECF No. 38-1; Pl.'s exs., ECF No. 38-2. On July 24, 2024, Defendant Draughn filed her reply. Def.'s Reply, ECF No. 39.

On August 7, 2024, the Court struck Plaintiff's sur-reply as filed without permission on August 6, 2024. Order, ECF No. 41; Pl.'s Sur-Reply, ECF No. 40.

## II.    **LEGAL STANDARDS**

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed.

R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[3] A fact is material when it "might affect the outcome of the suit under the governing law.... Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. *Id.* The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). "[W]hen both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). "Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper. *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). However, if the non-moving party fails to make a sufficient showing on an essential element of its case on which it has the burden of proof and submits "merely colorable evidence," then summary judgment

is appropriate. *Celotex*, 477 U.S. at 322–23; *Anderson* 477 U.S. at 249–50. The non-moving

party "must do more than simply show that there is some metaphysical doubt as to the

material facts, and may not rely on conclusory allegations or unsubstantiated speculation."

*Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). There must be evidence on

which the jury reasonably could find for the non-moving party. *Dawson v. Cnty. of

Westchester*, 373 F.3d 265, 272 (2d Cir. 2004).

### III.   DISCUSSION

Defendant maintains that Plaintiff's Eighth Amendment claim fails as a matter of law,

and alternatively, she is entitled to qualified immunity. Def.'s Mem. at 4–18.

### A.   Eighth Amendment

The Eighth Amendment to the U.S. Constitution protects against the infliction of

cruel and unusual punishment. See U.S. Const. amend. VIII. The Supreme Court has long

recognized that prison officials violate the Eighth Amendment if they are deliberately

indifferent to a sentenced prisoner's serious medical needs. *See Farmer v. Brennan*, 511 U.S.

825, 835 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).

For an Eighth Amendment claim of deliberate indifference to a serious medical need,

a plaintiff must satisfy both objective and subjective elements. *Hathaway v. Coughlin*, 37

F.3d 63, 66 (2d Cir. 1994). First, the alleged deprivation "must be, in objective terms,

sufficiently serious." *Id.* (quotations and citations omitted). "Second, the charged official

must act with a sufficiently culpable state of mind." *Id.*

Under the objective prong, the inmate's medical need or condition must be "a serious

one." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). To satisfy the second subjective

prong, a prison official or medical staff member must have been actually aware of a

substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006). "[M]ere medical malpractice is not tantamount to deliberate indifference," unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces a conscious disregard of a substantial risk of serious harm." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (internal quotation marks and citation omitted). Further, "mere disagreement over the proper treatment does not create a constitutional claim," and "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id.*; *see also Hathaway*, 37 F.3d at 70 ("We do not sit as a medical board of review. Where the dispute concerns not the absence of help but the choice of a certain course of treatment, or evidenced mere disagreement with considered medical judgment, we will not second guess the doctors.").

## 1.    Objective Element

Defendant Draughn argues that Plaintiff cannot satisfy the objective element of the Eighth Amendment analysis because he suffered only a short temporary delay in treatment that did not cause him any serious harm. Def.'s Mem. at 6–12.

"In cases where a prisoner alleges a delay in medical treatment, courts examine both the seriousness of the prisoner's medical conditions and the harm caused by any unreasonable delay." *Lombardo v. Graham*, 807 F. App'x 120, 123 (2d Cir. 2020) (citing *Salahuddin*, 467 F.3d at 280). The court's objective "serious medical need inquiry can properly take into account the severity of the temporary deprivation alleged by the prisoner." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003). The court should consider "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather

than the severity of the prisoner's underlying medical condition." *Id.* "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Id.* at 187; *see also Bilal v. White*, 494 F. App'x 143, 145–46 (2d Cir. 2012) ("Even assuming that [Inmate]'s conditions could produce serious complications if neglected over sufficient time, there is no evidence that [Inmate]'s conditions worsened over the hours of delay here[.]") (internal citation omitted). *see also Ferguson v. Cai*, No. 11-CV-6181, 2012 WL 2865474, at *4 (S.D.N.Y. July 12, 2012) ("Where temporary delays or interruptions in the provision of medical treatment have been found to satisfy the objective seriousness requirement in [the Second] Circuit, they have involved either a needlessly prolonged period of delay, or a delay which caused extreme pain or exacerbated a serious illness.").

Here, the record reflects that approximately thirty minutes after Plaintiff's interaction with Nurse Draughn, Plaintiff suffered increased breathing difficulty, causing the kitchen staff to seek additional medical assistance; and that approximately another nineteen minutes later, the kitchen staff called a Code White for emergency medical assistance. Def.'s L.R. ¶¶ 9–10, 20, 22; *see* Def.'s ex. D (Incident Reports) at 8. The incident reports from DOC correctional staff and Nurse Campos indicate that Plaintiff was brought in a wheelchair to a medical unit where he received treatment. *See* Def.'s ex. D (Incident Reports) at 4–9, 11. Plaintiff avers that Nurse Campos advised that he could be provided with a nebulizer because his blood pressure was too high. Pl.'s decl., ECF No. 38-2 ¶ 27. Nurse Campos assessed Plaintiff as "stable" after treatment on November, 12, 2022. Def's ex. C (Medical Record) at 55. But in the medical record for Plaintiff's appointment on November 14, 2022, Dr. Valletta noted that Plaintiff had

a worsening clinical status; that he reported using his rescue inhaler several times per day without symptom relief, experiencing headaches and chest tightness; and that he stated "this feels different than previous asthma exacerbations." *Id.* at 50–54.[9]

Accordingly, the record in this case raises genuine questions of fact about whether Plaintiff suffered an objectively serious medical deprivation arising from Nurse Draughn's failure to address his respiratory distress on November 12, 2022. At this juncture, disputed factual issues preclude granting the motion for summary judgment in Defendant Draughn's favor on her claim that Plaintiff cannot satisfy the Eighth Amendment's objective element as a matter of law.[10]

### 2.    Subjective Element

Defendant Draughn argues Plaintiff cannot show, as a matter of law, that she acted with the requisite state of mind to support his claim of Eighth Amendment deliberate indifference. Def.'s Mem. at 12–17.

Relevant to the subjective component of the Eighth Amendment analysis, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions. *See Salahuddin,* 467 F.3d at

---

[9]Hemoptysis is a term for the condition of cough up blood from the lungs. https://www.webmd.com/lung/coughing-up-blood.

This entry includes the following approved medical abbreviations: PMHx (past medical history), SOB (shortness of breath), N/V/D (nausea, vomiting, diarrhea). https://www.ncems.org/pdf/AppG-Abbreviations.pdf.

[10] Defendant asserts that Plaintiff cannot prove, as a matter of law, that Nurse Draughn's actions constituted the proximate cause of his injury. Def.'s Mem. at 17–18. For the same reasons discussed relevant to the objective component, this issue is more appropriate for resolution by a jury.

280; *Amaker v. Coombe,* No. 96-CV-1622, 2002 WL 523388, at *8 (S.D.N.Y. Mar. 29,

2002) ("A delay in medical treatment does not by itself violate an inmate's Eighth

Amendment rights unless the delay reflects deliberate indifference to a serious risk of health

or safety, to a life-threatening or fast-degenerating condition or to some other condition of

extreme pain that might be alleviated through reasonably prompt treatment."). A "delay in

treatment does not violate the constitution unless it involves an act or failure to act that

evinces 'a conscious disregard of a substantial risk of serious harm.'" *Thomas v. Nassau

Cnty. Corr. Ctr.*, 288 F. Supp. 2d 333, 339 (E.D.N.Y. 2003) (quoting *Chance*, 143 F.3d at

703).

Nurse Draughn asserts that she did not know that Plaintiff may have been suffering

from acute respiratory distress or a medical emergency after she made a visual assessment of

his condition and confirmed that he had an albuterol inhaler with him. Def.'s Mem. at 14.

Plaintiff disputes Nurse Draughn's representations. He avers that he was coughing as he

approached her while she was focused on her laptop screen that contained inmate medical

information. Pl.'s decl. ¶ 9.

Nurse Draughn maintains that she was not aware of Plaintiff's identity or his

asthmatic condition at the time he approached her on November 12, 2022. Def.'s ex. A

(Draughn decl.) ¶ 9. By contrast, Plaintiff's certified allegations indicate that he previously

informed Nurse Draughn about his breathing issues and that she had previously denied his

requests for a nebulizer on several prior occasions. *See* Compl. ¶ 11; *see also* Pl.'s decl. ¶ 8.

The medical record substantiates that Plaintiff had interacted with Defendant Draughn as

recently as September 5, 2022 and on six other occasions between June 3, 2022 and April 10,

2022 for COVID testing; Def.'s ex. C (Medical Record) at 88, 120, 163, 165, 170-171, 174;

and that he had returned an inhaler to her because it was not working on October 22, 2021, *id.* at 270.

Construed most favorably to Plaintiff, the medical record and Plaintiff's averments raise a question of fact about whether Nurse Draughn could identify Plaintiff and had familiarity with his respiratory condition when he approached her about his breathing difficulty on November 12, 2022. The Court cannot render an assessment as to the credibility of the competing averments by Nurse Draughn and Plaintiff on this motion for summary judgment. *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 2017) ("Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.").

A jury reviewing the present record in this case, including Plaintiff's testimony, could determine that Nurse Draughn acted in conscious disregard of Plaintiff's need for immediate treatment for his respiratory difficulty. Accordingly, the Court will deny the motion for summary judgment.

### B.     Qualified Immunity

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions." *Distiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012)). "The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the

law.'" *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010)).

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotations and citations omitted). The Court has discretion to determine the order in which it will address the inquiries required when assessing the applicability of qualified immunity. *See Johnson v. Perry*, 859 F.3d 156, 170 (2d Cir. 2017) (quoting *Pearson* 555 U.S. at 236).

A right is clearly established if, "at the time of the challenged conduct ... every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). There is no requirement that a case have been decided which is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

In addition, qualified immunity protects state actors when it was objectively reasonable for the state actor to believe that his conduct did not violate a clearly established right. *Manganiello v. City of New York,* 612 F. 3d 149, 165 (2d Cir. 2010). "If a reasonable officer might not have known for certain that the conduct was unlawful – then the officer is immune from liability." *Ziglar v. Abbasi,* 580 U.S. 120, 152 (2017).

Here, Plaintiff had a clearly established right to medical care for his serious medical condition. *See Carlson v. Green*, 446 U.S. 14 (1980) (recognizing that the Eighth Amendment provides a damages remedy for a prison official's failure to treat a plaintiff's asthma). Because the qualified immunity analysis turns on the same factual questions

concerning whether Defendant Draughn acted with deliberate indifference to Plaintiff's serious medical needs, the Court cannot assess, as a matter of law, whether it was objectively reasonable for her to believe her conduct was not in violation of the Eighth Amendment at the time. Thus, the motion for summary judgment is denied on Nurse Draughn's claim for qualified immunity.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court **DENIES** Nurse Draughn's motion for summary judgment [ECF No. 28].

**SO ORDERED.**

Hartford, Connecticut
March 18, 2025

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge